504 So.2d 1361 (1987)
Peter R. RAYNER, Appellant,
v.
WISE REALTY COMPANY OF TALLAHASSEE; Charles W. Walter; Tallahassee Realty Company; James G. Lassetter and Maggie S. Lassetter, His Wife, Doing Business As, Tallahassee Realty Company, Appellees.
Peter R. RAYNER, aPPELLANT,
v.
Charles T. NOEGEL, Doing Business As Seminole Gator Exterminator, Appellee.
Nos. BL-111, BK-433.
District Court of Appeal of Florida, First District.
April 6, 1987.
Brian S. Duffy, Richard Johnston, Jr. and Robert M. Ervin, Jr., of Ervin, Varn, *1362 Jacobs, Odom & Kitchen, Tallahassee, for appellant.
S. Lindsey Gorman of Gorman & Matthew, P.A., Tallahassee, for appellees/Wise Realty and Charles W. Walter.
George H. Gwynn of Oven, Gwynn & Lewis, Tallahassee, for appellee/Tallahassee Realty Co.
O. Earl Black Jr., of Welch, Munroe & Black, P.A., Tallahassee, for appellee/Noegel.
SMITH, Judge.
Rayner appeals an order dismissing with prejudice his third amended complaint against Wise Realty Company of Tallahassee (Wise Realty), and others, in Case No. BL-111. He also appeals a final summary judgment entered in favor of Noegel, d/b/a Seminole Gator Exterminator (Noegel), in Case No. BK-433. We reverse in both cases.
We agree, for the reasons stated below, that Rayner's third amended complaint against Wise Realty and others sufficiently alleges that these defendants fraudulently failed to disclose the existence and contents of a termite inspection report from Florida Pest Control and Chemical Company (Florida Pest Control), revealing that wet rot, visible termite damage and evidence of termite infestation were observed in a house Rayner intended to purchase. Rayner later purchased the house after receiving, at closing, a termite clearance letter from Noegel stating that there was no active termite infestation on the property. We also agree that genuine issues of material fact exist as to whether Noegel was negligent in submitting a termite clearance letter instead of a termite inspection report which was required by Rule 10D-55.142(2)(c), Florida Administrative Code, and section 482.226(1), Florida Statutes (1979), and in failing to set forth in a written report that the residence which Rayner eventually purchased contained evidence of termite infestation and damage.
A brief recitation of the facts and circumstances giving rise to this litigation is necessary. Wise Realty secured a real estate listing agreement from Mr. and Mrs. Williams to sell their residential property for $49,500. Rayner, who was looking for a residence, sought the assistance of other realtors, James G. Lassetter and Maggie S. Lassetter, d/b/a Tallahassee Realty Company (Tallahassee Realty). The Lassetters showed Rayner the property belonging to Mr. and Mrs. Williams. After inspecting the property, Rayner offered to buy the property for $38,500 "as is." A written contract was prepared by the Lassetters containing, among other things, several provisions as to termite inspection.
In paragraph eleven of the contract, dated August 10, 1980, Mr. and Mrs. Williams agreed to have the improvements inspected for termite and other wood-destroying insects by a licensed exterminating company and a written report furnished to Rayner prior to closing and in accordance with Standard E of the contract. Standard E provided that if, during the course of the termite inspection, visible damage from present or previous infestation was found, "it shall be stated" in the written report and that the seller "may make repairs as required." Further, if the seller "elects not to make repairs," the buyer "shall have the option" of accepting the property in an "as is" condition, or voiding the contract and having the deposit returned. The contract also contained a special typewritten clause which was inserted in the contract to the effect that Rayner agreed to pay $38,500 and accept the property in an "as is" condition at time of inspection.
Prior to closing, Charles W. Walter, a real estate broker employed by Wise Realty, requested a termite inspection from Florida Pest Control. Florida Pest Control submitted to Wise Realty and Walter a Wood-Destroying Organism Inspection Report on HRS Form 1145, June 1979. This report stated that active termite infestation was not observed, but that wet rot, visible termite damage and evidence of termite infestation were observed. The report stated that termite treatment would be required to guarantee the absence of termites.
*1363 When Mr. and Mrs. Williams were made aware of the Florida Pest Control report, they told Walter that they could not put any more money into the property and that this was an "as is" sale. Mr. and Mrs. Williams showed Walter the brief letter they received from Noegel when they purchased the house in 1978 (Noegel had prepared a termite report for that closing), stating simply that there were no termites. Mr. and Mrs. Williams requested Walter to get a second opinion, telling him they were only willing to offer the same type of report they had been offered when they bought the property.
Walter requested another termite report from Noegel. Noegel delivered a brief one-sentence report to Wise Realty which stated: "Based on a careful visual inspection we have found no evidence of termite or other wood-destroying insect infestation on the subject property." Noegel testified that Walter contracted with him to do a "termite clearance letter," not a "termite inspection report," and that the two are different. According to Noegel, the termite clearance letter has a specific purpose  to ascertain whether there is termite infestation at the time of inspection. Noegel testified that when requested to do a termite clearance letter he does not include a statement regarding structural damage because of past termite infestation, but he does inform the person for whom he is working of such damage. He testified that when he delivered the termite clearance letter, he gave an oral report to Wise Realty that there was termite damage on the property. Noegel testified that this termite clearance letter which he delivered in October 1980 was one of the last he wrote before he started using a form required by the Department of Health and Rehabilitative Services (HRS).
Section 482.226(1), Florida Statutes (1979), requires that a termite or other wood-destroying organism inspection report be on a form prescribed by HRS Rule 10D-55.142(2)(c), implementing section 482.226(1), requires licensees, certified in the category of termite or other wood-destroying organism control, to report their findings on HRS Form 1145. This form provides for the reporting of, among other things, active infestation observed, other evidence of infestation observed, visible damage observed, and evidence of previous treatment.
Noegel's report, which was not in compliance with the statute or rule, was submitted at closing and Rayner took possession of the property. Rayner alleged that after taking possession of the property he became aware of extensive and serious termite infestation and termite damage behind walls, beneath carpets, in the roof and in other places not observable upon reasonable inspection.
Rayner filed suit against Noegel, Wise Realty, Walter, Tallahassee Realty, and the Lassetters. As to Noegel, he alleged that Noegel fraudulently, or  alternatively  negligently, misrepresented the condition of the property in his termite inspection report. As to each of the other defendants, he alleged fraudulent nondisclosure and negligent nondisclosure.
After some discovery, Noegel moved for summary judgment arguing, first, that his acts were irrelevant because of the "as is" language of the contract; and second, that he only did what he was told to do and was required to do nothing more. The trial court granted the motion for summary judgment.
Wise Realty and the other defendants in Case No. BL-111 moved the trial court for entry of an order dismissing the third amended complaint for failure to state a cause of action. They contended that they owed no duty to Rayner to advise him of the termite damage to the property because Rayner had agreed to accept the property "as is." The trial court responded by dismissing the third amended complaint with prejudice.
In his appeal against Wise Realty and the other defendants, Rayner makes no serious contention that a cause of action for negligent nondisclosure exists. Instead, he urges that his complaint states a cause of action for fraudulent nondisclosure, relying on Johnson v. Davis, 480 So.2d 625 (Fla. 1985), in which the Florida *1364 Supreme Court placed a duty on the seller to voluntarily disclose all known facts materially affecting the value of property which are not known or readily observable to the buyer.
In Johnson, the Florida Supreme Court recognized for the first time a cause of action for fraudulent nondisclosure in connection with real estate transactions. Although the Supreme Court did not specifically mention broker liability, in Johnson v. Davis, 449 So.2d 344, 350 n. 1 (Fla. 3d DCA 1984), the Third District Court of Appeal stated in dicta that the duty applies to real estate brokers as well. While no court in Florida has been faced with this exact question, in other jurisdictions this rule of voluntary disclosure has been extended to termite destruction. Cooksey, Caveat Venditor in Real Estate Sales, 60 Fla.B.J. 31, 32 (1986); Lynn v. Taylor, 7 Kan. App. 2d 369, 642 P.2d 131 (1982).
Nevertheless, appellees contend that no cause of action under Johnson exists in this case because it involves an "as is" sale, and that Rayner voluntarily contracted away any duty of disclosure by appellees by the insertion of the "as is" provision in the contract.
While the parties have not cited any case directly on point, we note that generally, an "as is" clause in a contract for sale of real property cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent nondisclosure. Annot., Construction and Effect of Provision in Contract for Sale of Realty by Which Purchaser Agrees to Take Property "As Is" or In The Condition In Which It Is, 97 A.L.R.2d 849 (1964). In this case, the written contract and Florida law required that visible damage from present or previous infestation be stated in the written termite report presented to Rayner at closing. Standard E of the contract permitted the seller to elect not to make repairs as required, in which event the buyer had the option to either accept the property in an "as is" condition, or to void the contract and receive a return of his deposit. While Rayner did agree to accept the property in an "as is" condition, the written report he received was not in compliance with the contract or Florida law since it did not advise him of previous termite infestation or damage.
Appellees rely heavily on paragraph G of the contract which states: "Typed or written provisions inserted in this contract shall control all printed provisions in conflict therewith." They point to the typed and "inserted" paragraph number fourteen, which reads:
The purchaser agrees to pay a total price for the property of $38,500.00 and accept the property in as is condition at time of inspection (with no serious change until time of closing). He agrees to pay cash above the existing mortgage of approx. $17,500.00 that is assumable. Any vacancy occurring in the house or apartment after contract will not be filled by the seller.
From the above, they argue that the "as is" language of paragraph fourteen "controls" over the printed provisions of paragraphs eleven and E, relating to termite inspections. We agree with appellees that, as provided in the contract, typed or written provisions inserted shall "control" all printed provisions. But we point out, as stated in paragraph G, that this applies only to the extent they are "in conflict." We agree with appellant that the "as is" provision of paragraph fourteen is not in total conflict with the termite inspection provisions of paragraphs eleven and E. If there is clear conflict, it is to be found between the printed language of paragraph eleven, providing that seller shall pay all costs of treatment required to remedy any termite infestation found on inspection, and the printed provision of paragraph E giving seller the option to make repairs of damage from any present or previous infestation found. It may also be conceded that the "as is" agreement is inconsistent with the provision of paragraph eleven to the extent that the latter may be read as obligating the seller to pay the costs of repairing damage from any termite infestation found.
It is clear, however, that the contract cannot be read as if paragraph E does not exist, as appellees urge us to do. Written provisions control to the exclusion of *1365 apparently conflicting printed provisions only where the provisions cannot be reconciled. Hurt v. Leatherby Insurance Company, 380 So.2d 432 (Fla. 1980); Allegheny Mutual Casualty Company v. State, 176 So.2d 362 (Fla. 2d DCA 1965). The parties clearly adopted paragraph eleven (which incorporates by reference paragraph E) by inserting a typewritten "x" in a square provided on the printed form for such purpose. Furthermore, the parties by their actions gave operative effect to the termite inspection requirement, the sellers (and the realtors) by securing, and the buyers by receiving, the termite inspection report. Finally, the agreement to purchase "as is" does not operate to exclude, but instead is merely supplemented by, the provision of paragraph E which effectively spells out the termite inspection procedure and gives the buyers the option to complete the "as is" purchase if termite damage is found, or to avoid the contract and receive a return of their deposit. Accordingly, we find that the "as is" provision in this real estate contract does not act as a bar to Rayner's claim of fraudulent nondisclosure.
Noegel's reliance on the "as is" language to bar recovery against him for negligence is unavailing for the same reasons. For authority on the question of whether a cause of action exists against Noegel for negligence, we need go no further than this court's decision in McNease v. Bone, 448 So.2d 1160 (Fla. 1st DCA 1984). There, Mr. and Mrs. Bone sued McNease, d/b/a Tallahassee Pest Control, seeking damages resulting from fungal infestation in a home they had purchased from the Bells. As in this case, Tallahassee Pest Control had filed a termite clearance letter which indicated no active termite infestation, rather than the termite inspection report required by section 482.226(1) and Rule 10D-55.142(2)(c) which would have required it to report evidence of fungal infestation present on the date of inspection. The trial court entered judgment for Mr. and Mrs. Bone and this court affirmed, finding that they were within the class intended to be protected by the statute and rule, the harm which occurred was the type which the statute and rule sought to prevent, and the breach of duty imposed by the statute and rule was the proximate cause of their damages.
Noegel's reliance on No-Risk Chemical Company v. El-Kerdi, 453 So.2d 482 (Fla. 2d DCA 1984), is misplaced. There, the court held that the purchaser of a house could not recover against No-Risk for breach of warranty or negligence in conducting a preclosing inspection where the termite inspector testified there was no sign of active infestation on the date he inspected the house. Although there was obvious termite damage to the house after closing, no witness testified that the house was infested with termites on the day the inspector inspected the house. The court held that the purchaser could not complain about the damage from the previous infestation because she purchased the property "as is" and was informed of the previous infestation at closing. The case is obviously distinguishable, because the purchaser was informed of the previous infestation. Further, the sale in this case occurred prior to the effective date of the statute and rule requiring written termite inspection reports to be on HRS Form 1145. Accordingly, we agree with Rayner that there is evidence from which a jury could conclude that Noegel was guilty of negligence and the summary judgment was error.
REVERSED and REMANDED for proceedings consistent with this opinion.
JOANOS and BARFIELD, JJ., concur.