[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2012
JOHN LEY
CLERK

No. 11-11027

_____

D.C. Docket No. 6:08-cv-00815-GAP-GJK


LUIS VIRGILIO,
NORMA VIRGILIO,

                                                          Plaintiffs - Appellants,


versus


THE RYLAND GROUP, INC.,
a Maryland corporation, et al.,

                                                          Defendants,


TERRABROOK VISTA LAKES L.P.,
TERRABROOK VISTA LAKES GP, L.L.C.,
NEWLAND COMMUNITIES, L.L.C.,
WESTERRA MANAGEMENT, L.L.C.,

                                                          Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 18, 2012)

Before TJOFLAT and BARKETT, Circuit Judges, and SMOAK,[*] District Judge.

TJOFLAT, Circuit Judge:

This is a class action.  It was brought in April 2008 by Luis and Norma Virgilio on behalf of themselves and others who purchased houses from a builder, the Ryland Group, Inc. ("Ryland"), in the Newport subdivision of Vista Lakes, a residential development in Orlando, Florida.[1]  The Newport subdivision is adjacent to land known as "Pinecastle."  Pinecastle was used as a bombing range during World War II and remains laden with unexploded bombs, ammunition, ordnance, and related chemicals.[2]  When the Virgilios and the other members of their class bought houses from Ryland, they were unaware of Pinecastle.  Later, after Pinecastle's existence became public, their houses lost considerable market value, and the Virgilios brought this lawsuit to compensate for the loss.

---

[*] Honorable Richard Smoak, United States District Judge for the Northern District of Florida, sitting by designation.

[1] The Virgilios commenced this litigation against Ryland in the Circuit Court of Orange County, Florida, on April 17, 2008.  On May 21, 2008, Ryland removed the case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1441(a) and the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, codified in part at 28 U.S.C. §§ 1332(d) and 1453.  The court had diversity jurisdiction under 28 U.S.C. § 1332 because Ryland and the Virgilios and presumably several other members of the plaintiff class had diverse citizenship.

[2] Pinecastle was formerly known as the Tactical Demonstration Range, the Orlando Range, the Pinecastle Jeep Range, and the Pinecastle Chemical Demonstration Range.  Vista Lakes consists of 948 acres of land, part of which had been devoted to Pinecastle.

2

In July 2008, the Virgilios amended their complaint to include as defendants, in addition to Ryland, four entities involved in the development of the Vista Lakes residential community: Terrabrook Vista Lakes LP ("Terrabrook") and Terrabrook Vista Lakes GP, LLC ("Terrabrook GP"); Terrabrook's general partner; Newland Communities, LLC ("Newland"); and Westerra Management, LLC ("Westerra").

The Virgilios and the members of their class (collectively "Plaintiffs") sought damages against Ryland on multiple legal theories, all rooted in Plaintiffs' buyer-seller relationship with Ryland. The several legal theories Plaintiffs pursued against Terrabrook, Terrabrook GP, Newland, and Westerra (collectively "Defendants") were based on their failure to inform Plaintiffs before they purchased their houses that the houses were located in close proximity to Pinecastle.

The District Court denied as legally insufficient Plaintiffs' claims against Defendants and entered judgment for Defendants on February 11, 2011. The same day, the court certified the plaintiff class, approved the $1.2 million settlement Plaintiffs had reached with Ryland, and entered judgment against Ryland. Plaintiffs now appeal the judgment entered in favor of Defendants on four of their claims.

# I.

## A.

### 1.

The claims denied by the District Court are presented in four counts of Plaintiff's complaint.[3] All of the counts allege the following facts: Terrabrook sold Ryland the undeveloped land that became the Newport subdivision of Vista Lakes and informed Ryland of Pinecastle's existence;[4] Terrabrook and Terrabrook GP "actively marketed Vista Lakes and the fact that Ryland was building and selling" houses in the Newport subdivision of Vista Lakes;[5] Terrabrook received from Ryland "1.5% of the gross sales price of each lot . . . or home sold in the Newport subdivision . . . to purchasers such as Plaintiffs";[6] Newland was "responsible for the subdivision, development and marketing of all of the homes in Vista Lakes, including the [Newport subdivision]," and "directly or indirectly

---

[3] The complaint before us is Plaintiffs' Third Amended Complaint. We refer to it in this opinion as the "complaint." The complaint contained 11 counts in all. We have recast the counts at issue here as Counts 1, 2, 3, and 4.

[4] Complaint ¶ 16, Virgilio v. Ryland Grp. Inc., No. 6:08-cv-815-ORL-37GJK (M.D. Fla. Mar. 6, 2009).

[5] Complaint ¶ 16, 17.

[6] Complaint ¶ 16. The complaint also asserts, in a conclusory way and without any factual support, that the other defendants received the 1.5 percent disbursement. We assume that the basis for the allegation is the allegation that the four Defendants were agents for one another. See id. ¶ 20.

4

benefitted financially from the sale of" the houses in that subdivision, including Plaintiffs';[7] and Westerra "was actively involved in [Terrabrook's] sale of the [undeveloped land] to Ryland and benefitted financially."[8]

In addition to these factual allegations, each count alleges that "Terrabrook, [Terrabrook GP], Newland, and Westerra [we]re agents of each other [and,] [a]cting in concert, . . . were responsible for the development and marketing of all [of] Vista Lakes, . . . includ[ing the] Newport [subdivision]"; that "each . . . knew of the existence of [Pinecastle] prior to obtaining an ownership interest in or developing" the Newport subdivision and the sale of houses to Plaintiffs; and that Defendants failed to "disclose[] the existence of [Pinecastle] to Plaintiffs" before Plaintiffs purchased houses within the Newport subdivision.[9]

All four counts allege that Defendants, individually and as agents for one another, had an "affirmative duty" to inform Plaintiffs about Pinecastle, but did not. The counts differ, however, as to the source of this duty.

2.

Count 1 attributes the duty to the Florida Supreme Court's decision in

---

[7] Complaint ¶ 18.

[8] Complaint ¶ 19.

[9] Complaint ¶ 20.

5

Johnson v. Davis, which holds that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." 480 So. 2d 625, 629 (Fla. 1985). Although Defendants were not the sellers of the houses Plaintiffs bought, Count 1 alleges that they are liable as Ryland's "agents."[10]

Count 2 is silent as to the source of the duty but implies that it lies in equity, since it is a claim for unjust enrichment. Count 2 alleges that because Defendants failed to inform Plaintiffs about Pinecastle, it would be "inequitable for Defendants to retain th[e] benefits" Terrabrook received in the form of 1.5 percent of the gross sales price of the houses Ryland sold to Plaintiffs.[11]

Count 3 locates the duty in the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq., asserting that Defendants' failure to inform Plaintiffs about Pinecastle constituted a "deceptive, misleading, and unfair [trade] practice."[12]

Count 4 locates the duty in common law negligence.

---

[10] Complaint ¶ 79.

[11] Complaint ¶ 124.

[12] Complaint ¶ 142.

6

Counts 1, 3, and 4 seek compensation for the loss of value Plaintiffs' houses sustained due to their close proximity to Pincastle. The compensation sought is the difference between the current market value of Plaintiffs' houses and the price Plaintiffs paid Ryland for the houses. Count 2 seeks the recovery of 1.5 percent of the purchase price of every home Ryland sold in the Newport subdivision, a total of approximately $500,000.[13]

## B.

The District Court dismissed Counts 1 and 2 with prejudice and Count 3 without prejudice on June 8, 2009,[14] pursuant to Federal Rule of Civil Procedure 12(b)(6).[15] The court granted Defendants summary judgment on Count 4 on February 8, 2010, pursuant to Federal Rule of Civil Procedure 56. The court's reasons for its rulings were as follows. The District Court dismissed Count 1 because Florida's appellate courts appeared unwilling to extend the seller's duty to disclose found in Johnson v. Davis beyond those in privity with the buyer or those

---

[13] Terrabrook received $2,507.85 from the proceeds of the sale to the Virgilios.

[14] The court gave Plaintiffs leave to amend Count 3. Plaintiffs chose to stand on Count 3 as pled, and the dismissal of Count 3 became a dismissal with prejudice when the court entered final judgment for Defendants.

[15] Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a plaintiff's claim on the ground that the plaintiff "fail[ed] to state a claim upon which relief can be granted[.]"

acting as an agent for one in privity with the buyer, e.g., the seller's real estate broker. Although Count 1 alleged that Defendants, as Ryland's "agent[s]," actively marketed Vista Lakes, including the houses Ryland built in the Newport subdivision, the court noted that Count 1 failed to allege that Defendants' "marketing efforts were at the behest or direction of Ryland, that Ryland exercised any control over [the] marketing efforts, or that [Defendants] actually listed any of the homes . . . on behalf of Ryland."[16]

The District Court dismissed Count 2 for the same reason it dismissed Count 1: even assuming the Plaintiffs conferred a benefit on Defendants,[17] the Johnson duty to disclose did not extend to Defendants. Since Defendants did not breach a duty to Plaintiffs, Plaintiffs had not been wronged and Defendants were not unjustly enriched.[18] Count 2 therefore failed to state a claim for unjust enrichment. The District Court dismissed Count 3 because the alleged FDUTPA "deceptive or unfair trade practice" was the breach of an affirmative duty of

---

[16]  Virgilio v. Ryland Grp., Inc. (Virgilio I), No. 6:08-cv-815-Orl-31GJK, slip. op. at 9 (M.D. Fla. June 6, 2009) (order partially granting Defendants' motion to dismiss Plaintiffs' Third Amended Complaint).

[17]  The district court, in previously dismissing Plaintiffs' unjust enrichment count without prejudice, had concluded that Plaintiffs conferred no benefit on Defendants. See Virgilio v. Ryland Grp., Inc., No. 6:08-cv-815-Orl-31GJK, slip op. at 10 (M.D. Fla. Feb. 9, 2009) (order partially granting Defendants' motion to dismiss Plaintiffs' Second Amended Complaint).

[18]  Virgilio I, slip op. at 11.

8

disclosure.  As the court found in dismissing Count 1, Defendant had no such duty.[19]

The District Court granted summary judgment as to Count 4 in an order granting Defendants' motion for summary judgment.  See Virgilio v. Ryland Grp., Inc. (Virgilio II), 695 F. Supp. 2d 1276 (M.D. Fla. 2010).  Plaintiffs were seeking to recover an economic loss, the diminished value of their houses.  But Plaintiffs failed to

> identif[y] a single Florida case recognizing a common law claim for negligence, or "negligent non-disclosure," that imposes an affirmative duty on a developer, or on an entity that promotes a residential development, to publicly disclose material facts that may negatively affect the economic value of a home that the developer did not build, own or sell.

Id. at 1281.

## C.

Plaintiffs claim reversible error in the District Court's denial of Counts 1 through 4.  In part II below, we consider their claims of error and conclude that none has merit.

## II.

We consider Plaintiffs' challenges to the District Court's rulings de novo, as

---

[19]  Virgilio I, slip op. at 12.

9

follows.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam);

Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th

Cir. 2005).  As to Counts 1, 2, and 3, dismissed under Rule 12(b)(6), we accept as

true Plaintiffs' allegations of fact.  Hill, 321 F.3d at 1335.  If, however, "the facts

as pled [in the count] do not state a claim for relief that is plausible on its face,"

the count must be dismissed.  Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th

Cir. 2010) (quoting Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th

Cir.2009)).  As to Count 4, we apply the same standard the District Court

employed; we consider in the light most favorable to Plaintiffs the evidence before

the District Court and all reasonable inferences that evidence yields.  Centurion,

420 at 1149.  Defendants are entitled to summary judgment if, after doing this, we

conclude that there exists no genuine issue of material fact and that Count 4 fails

as a matter of law to present a claim for relief.  Holloman v. Mail-Well Corp., 443

F.3d 832, 836–37 (11th Cir. 2006).

Florida law provides the rule of decision for all four counts.  In the absence

of a rule, we "must 'decide the case the way it appears the [Florida Supreme

Court] would.'"  Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290

(11th Cir. 2001) (quoting Royal Ins. Co. of Am. v. Whitaker Contracting Corp.,

242 F.3d 1035, 1040 (11th Cir. 2001)).

10

## A.

Plaintiffs argue that the District Court erred in concluding that Defendants were not subject to the Johnson v. Davis duty to disclose.  480 So. 2d 625, 629 (Fla. 1985).  We find no error.

In Johnson, the Florida Supreme Court abrogated the doctrine of caveat emptor in a case where, in an arms-length transaction between the sellers and buyers of a house, the sellers had knowledge of facts that materially affected the value of the house but the buyers did not.  Id.  The Davises entered into a contract to buy the Johnsons' home.  Id. at 626.  The contract required the Davises to pay a $5,000 deposit upon signing the contract and an additional $26,000 at closing.  Id.  Before the closing, Mrs. Davis noticed "buckling and peeling plaster around the corner of a window frame in the family room and stains on the ceilings in the family room and kitchen."  Id.  Mr. Johnson, upon Mrs. Davis's inquiry, told Mrs. Davis that the window had once leaked, but the leak had been repaired and that the stains on the ceilings were from wallpaper glue and ceiling beams having been moved.  Id.

After the sale closed, Mrs. Davis entered the house following a heavy rain. To her surprise, rainwater was gushing in through the window frame and the ceiling.  Id.  After the Davises informed the Johnsons that the roof was inherently

11

defective and needed to be replaced, the Johnsons refused to replace it, and the Davises sued them in the Dade County Circuit Court, seeking the rescission of the contract and the return of their deposits. Id. Both sides prevailed. Id. The Davises were awarded $26,000, the deposit paid at closing; the Johnsons were allowed to retain the $5,000 deposit the Davises paid on signing the contract. Id. at 626–27. On appeal, the Third District Court of Appeal affirmed the Davises' $26,000 award, but reversed the Johnsons' $5,000 award. Id. The Johnsons then petitioned the Florida Supreme Court for review, which the court granted to resolve a conflict between the Third District Court of Appeal's decision and the decisions of two other District Courts of Appeal. Id.

The issue before the Florida Supreme Court was whether the Davises could recover the deposit they paid before the Johnsons had made any statements regarding the window frame and the stains on the ceiling. The general rule at the time, the court explained, was that "where the parties are dealing at arm's length and the facts lie equally open to both parties, with equal opportunity of examination, mere nondisclosure does not constitute fraudulent concealment." Id. at 628 (citing Ramel v. Chasebrook Constr. Co., 135 So. 2d 876 (Fla. 2d Dist. Ct. App. 1961)). The court concluded, however, that the rule was "not in tune with the times and [did] not conform with current notions of justice, equity and fair

12

dealing." Id.  It pointed out that the law appeared to be working toward the conclusion that "full disclosure of all material facts must be made whenever elementary fair conduct demands it."  Id.  The court accordingly held "that where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Id. at 629.

Since the Johnson decision, the District Courts of Appeal have extended Johnson's duty to disclose to real estate brokers acting as the seller's agent.  See Rayner v. Wise Realty Co. of Tallahassee, 504 So. 2d 1361, 1363–65 (Fla. 1st Dist. Ct. App. 1987); Revitz v. Terrell, 572 So. 2d 996, 998 n.5 (Fla. 3d Dist. Ct. App. 1990) (citing Rayner, 504 So. 2d at 1363–65).  But the District Courts of Appeal have gone no further, which explains why Plaintiffs have failed to cite an appellate decision extending Johnson's disclosure duty to parties standing in Defendants' shoes.[20]

Plaintiffs nonetheless asks us to anticipate that the Florida Supreme Court, were it called on to decide the instant case, would hold that Defendants had a duty

---

[20] Plaintiffs argue that Billian v. Mobil Corp., 710 So. 2d 984 (Fla. 4th Dist. Ct. App. 1998), has extended Johnson's duty to parties in Defendants' factual positions.  Billian is inapposite.  Billian was a suit by the purchasers of a condominium against the developer that sold them the unit, not a suit against a party remote from the sale.  Id. at 986.

13

to disclose Pinecastle's existence because Plaintiffs needed to know whether the price Ryland was quoting represented "the fair market value" of the home under consideration, i.e., the price that would be paid for the home to a willing seller, not compelled to sell, by a willing buyer, not compelled to buy, considering all reasonable uses to which the property is adapted.[21]  Plaintiffs needed to know about Pinecastle so they could determine whether to accept Ryland's offer to sell or make a counteroffer for substantially less for the house.[22]  The Florida Supreme Court would rule their way and sustain Count 1, Plaintiffs submit, because Count 1 alleges that Defendants, in failing to inform Plaintiffs about Pinecastle, were acting as Ryland's agents.

Count 1's allegation that Defendants were acting as Ryland's agent is a mere conclusion.  The Florida Supreme Court would surely look past this conclusory allegation and search Count 1 for facts from which the alleged agency could be inferred.  All the court would find is that Defendants marketed Vista Lakes and that Terrabrook received 1.5 percent of the gross sale price of each

---

[21]  Savers Fed. Sav. & Loan Ass'n v. Sandcastle Beach Joint Venture, 498 So. 2d 519, 521–22 (Fla. 1st Dist. Ct. App. 1986) (citing State Road Dept. v. Stack, 231 So. 2d 859 (Fla. 1st Dist. Ct. App. 1969)).

[22]  If the Florida Supreme Court so held for Plaintiffs, we suggest that its holding would require the disclosure of any information Defendants possessed but Plaintiffs could not readily obtain that would bear significantly on the fairness of Ryland's offers.

14

home Ryland sold. The court would accept those facts as true, but those facts do not yield a reasonable inference that Defendants marketed Vista Lakes and participated in the sales to plaintiffs as Ryland's agent. Count 1 is missing an essential allegation—the critical element of an agency relationship—that the principal exercised, or had the ability to exercise, control over the agent.[23]

Plaintiffs' argument would require us to accept that Defendants had a duty to disclose even without knowing Plaintiffs' identities. Plaintiffs' argument, in effect, is that to comply with their Johnson duty to disclose, Defendants should have warned the public about Pinecastle when they first learned of its existence. That the Florida Supreme Court would extend the Johnson duty to those standing in Defendants' shoes is not, in our view, a reasonable claim.[24] We therefore affirm the District Court's dismissal of Count 1.

### 2.

Plaintiffs argue that the District Court erred in dismissing Count 2, their

---

[23] An essential element of the existence of an actual agency relationship is "control by the principal over the actions of the agent." Goldschmidt v. Holman, 571 So. 2d 422, 424 n. 5 (Fla 1990) (citing Restatement (Second) of Agency § 1 (1957)). Nothing in Plaintiffs complaint comes close to alleging that Ryland controlled Defendants. That Defendants were agents of one another and acted in concert did not establish this control element.

[24] We reject the notion that Defendants should have warned the public at large, and thus Plaintiffs, in our discussion of Plaintiffs' Count 4 negligence claim. See infra part II.A.4.b

15

claim for unjust enrichment. They assert that the court erred because it mistakenly concluded that they had not conferred a benefit on Defendants and that it would not be inequitable for Defendants to retain the 1.5 percent of gross sales Ryland paid Terrabrook. We agree with the District Court that Plaintiffs failed to allege that they conferred a benefit on Defendants.

A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof. Fla. Power Corp. v. City of Winter Park, 887 So. 2d 1237, 1241 n. 4 (Fla. 2004) (quoting Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc., 668 So. 2d 205, 207 (Fla. 2d Dist. Ct. App. 1995)). The crux of Plaintiffs' argument is that they "indirectly" conferred a benefit on Defendants because the 1.5 percent fee Ryland paid for Defendants' marketing services represented 1.5 percent of the price Ryland received from Plaintiffs at closing. As support for their argument, Plaintiffs cite the unpublished opinion in MacMorris v. Wyeth, Inc., No. 2:04-cv-596-FTM-29-DNF, 2005 WL 1528626 (M.D. Fla. June 27, 2005), a products liability case in which the plaintiffs claimed, under the theory of unjust enrichment, the money paid by the intermediary from whom they purchased drugs

16

to the manufacturer of the drugs. In ruling on the manufacturer's motion to dismiss the plaintiffs' claims, the court rejected the argument that, because the plaintiffs had purchased the drugs through an intermediary, they conferred no benefit on Wyeth. Id. at *4. Even putting aside the notable distinction that MacMorris was a products liability case, the claims in MacMorris are distinguishable from the one here. In the instant case, Plaintiffs do not seek to recover money Terrabrook received as partial payment for the houses they bought; instead, they seek the money Ryland paid for marketing services under an entirely separate services contract. McMorris is inapposite.

Plaintiffs contend that they conferred a benefit on Defendants because "Ryland was merely a pass-through conduit required to deliver" the 1.5 percent fee to Defendants. We are unconvinced that the manner of Ryland's payment supports Plaintiffs' contention. Indeed, to the extent that Ryland had no right to retain 1.5 percent of the sale prices of Plaintiffs' houses, it was because Defendants fulfilled their contractual duty to market Vista Lakes. If Ryland concluded that Defendants had not fulfilled their contractual duty, it could have refused to pay the fee and sued for breach of contract. The mere fact that Ryland bargained away its right to 1.5 percent of the purchase price of Plaintiffs' houses did not change the fact that Ryland, not Plaintiffs, conferred the benefit on

17

Defendants. The District Court therefore ruled correctly in dismissing Count 2.

3.

The District Court dismissed Count 3, Plaintiffs' FDUTPA claim, because Defendants did not engage in the only deceptive act or unfair practice that Count 3 alleged—they did not breach of any duty to disclose the existence of Pinecastle.[25] Plaintiffs argue that claim should not have been dismissed because a duty to disclose is not, of necessity, an element of a claim.

The problem with Plaintiffs' argument is that, whether or not a duty to disclose is an element of a FDUTPA claim, the sole basis alleged for Count 3's FDUTPA claim is Defendants' breach of "an affirmative duty of disclosure" when Defendants "knowingly omitted any disclosure of the existence of [Pinecastle]."[26] As we held in affirming the District Court's dismissal of Count 1, and will hold in affirming the dismissal of Court 4, the alleged duty of disclosure did not exist under Florida law. Court 3 therefore fails to state a claim for relief.

4.

Plaintiffs argue that the summary judgment the District Court granted

_____

[25] "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d Dist. Ct. App. 2006) (citing Chicken Unlimited, Inc. v. Bockover, 374 So. 2d 96, 97 (Fla. 2d Dist. Ct. App. 1979)).

[26] Virgilio I, slip op. at 12.

18

Defendants on Count 4 should be vacated and remanded for two reasons. First, the court abused its discretion in denying their Federal Rule of Civil Procedure 56(f) request for a continuance based on their need to conduct additional discovery.[27] Second, and alternatively, the court erred in concluding that Florida negligence law did not require Defendants to inform Plaintiffs about Pinecastle before they contracted with Ryland. We consider these two reasons in turn.

a.

At the time Plaintiffs moved the District Court for a continuance, Rule 56(f) read as follows:

> WHEN AFFIDAVITS ARE UNAVAILABLE. If a party opposing [a] motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>     (1) deny the motion;
>     (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>     (3) issue any other just order.

Fed. R. Civ. P. 56(f) (2009). "Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of [R]ule 56(f) by presenting specific facts explaining the inability to make

_____

[27] We review the District Court's denial of Plaintiffs' Rule 56(f) motion for abuse of discretion. Fla. Power & Light Co. v. Allis Chalmers Corp., 893 F.2d 1313, 1315 (11th Cir. 1990).

a substantive response." SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980).[28]

The only issue presented by Defendants' motion for summary judgment was whether, under Florida negligence law, Defendants had a duty to disclose the existence of Pinecastle to Plaintiffs. Resolution of that issue required the court to examine Defendants' involvement, if any, in the transactions between Ryland and Plaintiffs and Defendants' personal relationships, if any, with Plaintiffs.[29] The nature of those transactions was never in dispute and was clearly spelled out in the record.

Plaintiffs' Rule 56(f) motion sought discovery of matters irrelevant to those transactions: Defendants' knowledge of Pinecastle and the relationship between Defendants and Ryland. Since such information would have no bearing on the "purely legal" issue before the court, Plaintiffs failed to present "specific facts explaining the[ir] inability to make a substantive response" to Defendants' motion for summary judgment.

In addition to this substantive Rule 56(f) deficiency, Plaintiffs waited until

---

[28] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[29] See infra part II.A.4.b

20

the day before the clock ran out for filing a response to the Rule 56(f) motion. This coupled with the substantive Rule 56(f) deficiency gave the District Court an adequate basis for denying the requested continuance. We thus find no abuse of discretion in the denial.

b.

To be sustained as a claim of negligence, Count 4 must allege four elements: a duty, breach of that duty, causation, and damages. See Curd v. Mosaic Fertilizer, L.L.C., 39 So. 3d 1216, 1227 (Fla. 2010) (quoting Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)). "[E]stablishing the existence of a duty under [Florida's] negligence law is a minimum threshold legal requirement that opens the courthouse doors . . . , and is ultimately a question of law for the court rather than a jury." Williams v. Davis, 974 So. 2d 1052, 1057 n. 2 (Fla. 2007) (citing McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla. 1992)).

Plaintiffs would have us hold that entities engaged in creating a residential community by subdividing the land and selling lots to builders for the construction of houses for sale by the builders to the public are liable to the purchasers of those houses for the economic loss they suffer because—as a result of negative information possessed by the entities but not the purchasers—the price they paid

21

for the houses turned out to be more than their fair market value once the information became public knowledge. Plaintiffs have found nothing to support such a holding in the Florida case law, but they insist that the Florida Supreme Court would reach that conclusion were it to review the allegations of Count 4. To provide a foundation for the Florida Supreme Court's decision, Plaintiffs direct us to a statement the court made in McCain, that "Florida . . . recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." 593 So.2d at 503. As the court explained, that standard is meant to recognize a duty of care where a defendant's conduct creates a "foreseeable zone of risk." Id. (quoting Kaisner v. Kolb, 543 So. 2d 732, 735 (Fla. 1989)).

A new duty is more likely to be imposed under the "foreseeable zone of risk" standard under circumstances where the plaintiff has suffered personal or property damage.[30] Where the plaintiff seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of liability.[31] See Indem. Ins. Co. of N.h Am. v. Am. Aviation, 891 So.

---

[30] In McCain v Fla. Power Corp., the plaintiff sustained personal injury when the blade of a mechanical trencher he was operating struck an underground electrical cable belonging to the defendant. 593 So. 2d 500, 501 (Fla. 1992).

[31] In arguing that this court should hold Defendants liable for purely economic loss, Plaintiffs rely primarily on Curd v. Mosaic Fertilizer, L.L.C., 39 So. 3d 1216 (Fla. 2010). There,

2d 532, 546 (Fla. 2004) (Cantero, J., concurring) (explaining that, although the economic loss rule had been eliminated except in certain circumstances, "[t]he 'duty' prong remains a strong filter in [cases involving only economic damages]—virtually as strong as the rule itself"—and that "[t]he plaintiff still must demonstrate an independent duty to protect that plaintiff's purely economic interests"). With that in mind, it is important to consider whether the specific relationship between the plaintiff and defendant warrants imposing a duty on the defendant to protect the plaintiff's purely economic interests. See <u>Monroe v. Sarasota Cnty. Sch. Bd.</u>, 746 So. 2d 530, 534 n. 6 (Fla. 2d Dist. Ct. App. 1999) (explaining that "[d]ifficult economic loss cases all seem to examine the

---

the Florida Supreme Court held that the owner of a fertilizer storage facility that introduced pollutants into Tampa Bay, killing a substantial number of fish and other marine life, owed a duty of care to licensed commercial fishermen for their economic losses. <u>Id.</u> at 1218, 1227. The court discussed several cases from other jurisdictions holding that defendants polluting public waters have a duty to those who derive their living from those waters. <u>See id.</u> at 1225–27. Considering the "nature of [the defendant's] business and the special interest of the commercial fisherman in the use of the public waters," the court concluded that the defendant had a duty to the fishermen. <u>Id.</u> at 1228.

    We are not convinced that <u>Curd</u> would require the Florida Supreme Court to hold that Defendants owed a duty to Plaintiffs in this case. The issue in <u>Curd</u> was whether the fisherman could recover in negligence "despite the fact that the fishermen do not own any real or personal property damaged by the pollution." <u>Id.</u> at 1222. The court concluded, citing a breadth of case law from other appellate courts, that the fisherman had a "special interest" in the property—the marine life—that had been damaged. <u>Id.</u> at 1228. In the case at hand, however, the issue is not whether Plaintiffs have a property interest in the property that was damaged; indeed, Plaintiffs do not allege that <u>any</u> real or personal property was damaged. Thus, because Plaintiffs allege only a diminution in the value of their houses, the reasoning in <u>Curd</u> does not require imposing a duty in this case.

relationship between the parties to determine whether it warrants creating a duty to protect economic interests outside contract and statutory law"); cf Am. Aviation, 891 So. 2d at 547 (Cantero, J., concurring) ("Courts have considered allowing recovery from service providers for purely economic loss where a special or fiduciary relationship exists."). We consider the inquiry into the plaintiff and defendant's relationship even more pertinent where, as here, the plaintiff seeks to impose on the defendant an affirmative duty to disclose facts to another.

We find Plaintiffs' argument—that because Defendants developed and marketed Vista Lakes, they had a duty to warn prospective purchasers of Pinecastle's existence—without merit. Plaintiffs do not indicate whether, as a matter of principle, Defendants' duty to disclose such "inside information" has any limits, i.e, whether the duty would extend to any inside information which, if made public, would have a negative effect on market value. Nor do Plaintiffs tell us how far down the line of purchasers Defendants would have the duty to disclose.

Terrabrook informed Ryland of the Pinecastle problem when it sold Ryland the undeveloped land that became the Newport subdivision. Plaintiffs argue that Terrabrook (and Terrabrook GP, Newland, and Westerra, due to their legal relationship with Terrabrook and one another) had a duty to warn those with whom Ryland contracted. What about those to whom Ryland's home buyers sold

24

their houses? Would Terrabrook have a duty to them as well? Since Terrabrook was not a party to Ryland's contracts with the buyers, and thus did not know the buyers' identities, under Plaintiffs' approach the only way Defendants could discharge their duty of care would be through marketing: Defendants could not escape liability unless they saturated the market place with the negative information. And, as posited above, would not they be obliged to publicize any information they possessed that a buyer's due diligence would not uncover, but that, if made public, would indicate that the prices Ryland was quoting for its houses were, in Plaintiffs' words, "artificially inflated"?[32] Under Plaintiffs' approach, as long as Defendants marketed Vista Lakes, they could be sued for withholding information unavailable to buyers that would show that the prices the buyers paid for their houses were artificially inflated. In other words, whenever Defendants acquired material information that a buyer's due diligence would not uncover, Defendants would have to disclose it. And even if they disclosed the negative information, they still could be sued for failing to disclose it soon enough or in adequate detail. In the end, what started out as a claim of simple negligence might, as an economic matter, become a claim of strict liability.

In sum, we anticipate that the Florida Supreme Court would decline to reach

---

[32] Complaint ¶ 6.

25

the holding Plantiffs propose.  Given that circumstance, the District Court's grant of summary judgment on Count 4 must be affirmed.

III.

For the reasons stated above, the District Court's dismissal of Counts 1, 2, and 3 and the summary judgment granted on Count 4 are

AFFIRMED.