[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11388

Non-Argument Calendar

_____

TERESA J. SCOTT,

Plaintiff-Appellant,

*versus*

MACON BIBB COUNTY GEORGIA,
ANDREA CRUTCHFIELD,
JODY CLABORN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

D.C. Docket No. 5:21-cv-00239-MTT

————————————

Before JILL PRYOR, BRASHER, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Teresa Scott appeals the district court's order granting summary judgment for Defendants–Appellees Macon-Bibb County, Andrea Crutchfield, and Jody Claborn (collectively, Defendants). On appeal, Scott argues that the district court erred in granting summary judgment for Defendants on Scott's race discrimination claims because she established a prima facie case of discrimination under the *McDonnell Douglas*[1] framework and, alternatively, showed a convincing mosaic of discrimination. Scott also argues that she did not have a fair opportunity to gain relevant investigative files, and therefore, contends that the district court abused its discretion in denying her Federal Rule of Civil Procedure 56(d) motion to defer consideration of Defendants' motion for summary judgment. Because the district court did not abuse its discretion in denying Scott's motion to defer, we affirm the district court on that issue, but we reverse the district court's dismissal of Scott's Title VII race discrimination claim because a reasonable jury could find that Scott has presented sufficient circumstantial evidence of intentional discrimination.

---

[1] *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

## I.    Factual Background and Procedural History

Scott, a Black woman, filed her initial pro se complaint against her employer, Macon-Bibb County, pursuant to Title VII and 42 U.S.C. §§ 1981, 1983 for race discrimination. Scott later retained counsel, and without seeking leave of the court, filed her first amended complaint which added Appraisers Crutchfield and Claborn to the suit.[2] She alleged that Defendants racially discriminated against her by failing to timely reclassify her to Appraiser III in Macon-Bibb County's Tax Assessor's Office (TAO), in which she is employed in the Personal Property Division (PPD). After additional proceedings not relevant on appeal, Scott filed her second amended complaint against Defendants.

In her second amended complaint, Scott alleged the following facts. Crutchfield served as the Chief Appraiser for Macon-Bibb County's TAO, and Claborn served as the TAO's Deputy Chief Appraiser. Scott worked as an "Appraiser II."[3] Scott first began working for Macon-Bibb County as a receptionist in 1998 and became an "Appraiser Trainee" in the TAO in 2008. In July 2010, Scott passed the requisite Appraiser I exam; she was reclassified to the Appraiser I position in August 2012. She was not promoted to the

---

[2] The complaint also named Macon-Bibb County's Board of Tax Assessors. However, in a subsequent complaint, Scott removed the Board of Tax Assessors from the suit after the parties agreed that Macon-Bibb County, rather than the Board of Tax Assessors, was Scott's employer.

[3] Macon-Bibb County has several classes of appraisers—Appraiser Trainee, Appraiser I, Appraiser II, Appraiser III, and Appraiser IV.

Appraiser II position until 2015, five years after she passed the Appraiser II exam. On the Appraiser III exam, a 70 is considered a passing score, and an 80 is needed to later be eligible to take the Appraiser IV exam under Macon-Bibb County policy.

Scott took the Appraiser III exam on several occasions. Scott passed the Appraiser III exam on February 6, 2018, but she was not reclassified. By February 2020, Scott's supervisor, Desiree Murray, had recommended that Scott be reclassified to Appraiser III on several occasions. Murray indicated that she not only felt like Scott was qualified for reclassification to Appraiser III, but that she had been performing duties consistent with the Appraiser III designation for years. When Scott had still not been reclassified by February 2020, two years after Scott passed the exam, Murray made another explicit recommendation in Scott's annual evaluation. But Murray's recommendations were denied, and Claborn did not provide any reason for denying Scott's reclassification. Meanwhile, around the same time, several non-Black employees were reclassified within 30 days of passing their Appraiser III exams.

After the discovery deadline had passed, Defendants moved for summary judgment. Scott filed a motion to defer consideration of Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Within the motion, Scott asserted that after the close of discovery,[4] Scott learned that Macon-Bibb

---

[4] Notably, however, Scott's counsel failed to conduct *any* discovery at all during the discovery period. And Scott's counsel waited until *after* discovery

24-11388              Opinion of the Court              5

County "was conducting an investigation into its workplace." Upon realizing that the investigation was not specifically related to this litigation,[5] Scott submitted a request to Macon-Bibb County under the Georgia Open Records Act for the entire investigative file. Macon-Bibb County did not produce any documents related to the investigation on the grounds that the documents were attorney work product. The district court denied Scott's motion to defer.

The district court then granted Defendants' motion for summary judgment, holding that Scott did not meet the last two prongs of the *McDonnell Douglas* framework and, therefore, could not make out a prima facie case of Title VII race discrimination. The court also addressed Scott's other "catchall arguments" and "purported facts," noting that Scott does not exactly "call it a convincing mosaic or a direct evidence argument." Nevertheless, the court turned to said evidence and addressed it in a convincing mosaic-like analysis, once again concluding that Scott had not met her burden.[6]

---

closed in July 2023, and *after* Defendants moved for summary judgment in August 2023, to request information about the investigation.

[5] Scott's counsel notes in Scott's brief that he was under the impression that the investigative file was protected by the attorney work product doctrine and, therefore, not subject to discovery.

[6] We do the same here since "a plaintiff need not specifically use the term 'convincing mosaic' in the trial court to contend on appeal that she has offered enough evidence to survive summary judgment." *McCreight v. AuburnBank*, 117 F.4th 1322, 1336 (11th Cir. 2024).

Scott timely appealed both the grant of summary judgment and the denial of her Rule 56(d) motion to defer.

## II.    Standard of Review

"We review a district court's grant of summary judgment de novo applying the same standards as the district court." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284 (11th Cir. 1997) (emphasis removed). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*; *see also* Fed. R. Civ. P. 56(a). A factual dispute is genuine if it has a real basis in the record and the evidence is such that a reasonable jury could rule in favor of the nonmovant. *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (per curiam). When a district court considers a motion for summary judgment, it must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party and must resolve all reasonable doubts about the facts in favor of the nonmovant. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008).

We review the district court's denial of a motion to defer under Rule 56(d) for abuse of discretion. *See Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1315 (11th Cir. 1990) (originally referring to Fed. R. Civ. P. 56(f), the prior version of present Fed. R. Civ. P. 56(d)).

### III.    Title VII Claims

Title VII prohibits an employer from discriminating against a person with respect to the "terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Without direct evidence of discrimination, a plaintiff can prove a discrimination claim under Title VII through circumstantial evidence, which we generally analyze using the three-step, burden-shifting framework created in *McDonnell Douglas* or by using the convincing mosaic approach. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002); *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

A plaintiff may defeat a summary judgment motion under the convincing mosaic approach by presenting "circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis*, 934 F.3d at 1185 (quotation marks omitted). "The convincing mosaic approach is—in its entirety—the summary judgment standard. That phrase 'is a metaphor, not a legal test and not a framework.'" *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024).

Here, there is sufficient circumstantial evidence that would allow a jury to infer intentional discrimination.

But before discussing that evidence and the parties' arguments, it helps to frame the discussion with some policies relevant to Scott's employment. The TAO sets the standards for reclassification in Macon-Bibb County, while the Georgia Department of Revenue is responsible for administering the appraiser

examination. To qualify for reclassification to the Appraiser III position in the PPD, the TAO's policies and procedures manual states an individual:

- Must have the ability to make accurate appraisals of all types of personal property within his/her jurisdiction. Must be able to supervise and direct the activities of subordinate personnel effectively. The Appraiser III must:

- Be 21 years of age or older; hold a high school diploma or its equivalent;

- Have a minimum of four (4) years appraisal experience;

- Have the ability to apply correctly the three (3) approaches to value in appraising properties within his/her jurisdiction;

- Have the ability to organize and direct the activities of subordinate personnel;

- Have the ability to perform all phases of mass appraisal and revaluation work within his/her jurisdiction, including the ability to develop pricing and valuation schedules for personal property;

- Successfully have completed the State Appraiser III exam.

- Successfully have completed these appraisal courses offered by the Georgia Department of Revenue: Course I or Course IA, Course III, and two (2) of the following courses: Course II, Course IV (A/B), and Course V.

(Appraiser III job description).

On appeal, Defendants argue that they did not promote Scott to Appraiser III because for two reasons, she was not qualified. First, Scott did not score an 80 on the Appraiser III exam, and second, Scott has no supervisory experience. But they miss the mark with both arguments.

Turning first to supervisory experience, while Defendants argue that Scott was unqualified for the position of Appraiser III because she had no supervisory experience, the Appraiser III job description does not state that supervisory experience is required for promotion to Appraiser III. And evidence suggests that Scott has the "ability to organize and direct the activities of subordinate personnel," as required by the Appraiser III job description. Scott testified in her deposition that while she had not held the title of a "supervisor," she had indeed trained and given directives to subordinates during her employment. Scott also testified that she was able to meet the requirement of being able to supervise subordinates.

Murray, Scott's immediate supervisor, also explained in her affidavit that Scott had many of the traits one would assume a person would need to be a supervisor. She indicated that Scott was

trustworthy and dependable, that she was a team player, and that she often helped other employees to complete their work.

Turning next to the exam score, the Appraiser III job description requires that an Appraiser III must "[s]uccessfully have completed the State Appraiser III exam." And the Georgia Department of Revenue provides that "a passing grade of 70 or better" is considered "successful completion" of the Appraiser III examination.[7] The parties agree that Scott scored a 70. Defendants reply that while 70 is technically the passing score according to TAO policy, no one within the TAO has ever been reclassified to an Appraiser III without scoring at least 80 on the Appraiser III examination.

Indeed, at the summary judgment stage, Scott offered up eight possible comparators, none of whom scored lower than an 80 on the Appraiser III exam. Therefore, Defendants argued, and the district court agreed, that none of Scott's proposed comparators were similarly situated to Scott. But Defendants are fighting a strawman here. That Scott did not score an 80 is neither the crux of the matter, nor is it disputed here.[8] The real issue is that neither

_____

[7] It is true that the Georgia Department of Revenue requires a score of at least 80 on the Appraiser III examination to sit for the Appraiser IV examination. So, to sit for the Appraiser IV examination, Scott would have to score at least 80 on the Appraiser III examination. But qualification to sit for the Appraiser VI exam is different from qualification for promotion to Appraiser III.

[8] Scott acknowledged in her deposition that no one had been reclassified to an Appraiser III without a score of at least 80, and she does not dispute that she never received a score of 80 or above on the Appraiser III examination.

24-11388          Opinion of the Court          11

the Macon-Bibb County policies and procedures, nor the Georgia Department of Revenue policies, make any reference to a score of 80 being required for promotion to Appraiser III.[9]

And, as Scott notes, it was not until this case was pending for over two years, and after Defendants had already filed multiple motions to dismiss, that Defendants argued for the first time that Scott was not reclassified because she had not made the "required" score of 80 on the Appraiser III exam. Multiple times, Defendants changed their story about why they did not reclassify Scott,[10] and

---

[9] The Department of Revenue's policies provide as follows:

> To register and successfully complete the staff appraiser examinations, the following requirements must be met: . . . 3. Appraiser III: (i) Prerequisites; Achieve a passing grade of 80 or better on the Appraiser II examination, successful completion of Course II, and any two of Course III, Course IVA, Course IVB, or Course V. (ii) Successful Completion: Achieve a passing grade of 70 or better on the Appraiser III examination.

[10] In the EEOC position statement attached to their first motion to dismiss, Defendants argued that Scott was not reclassified to Appraiser III because she did not have a supervisor's recommendation and lacked supervisory experience. But Murray had recommended Scott for reclassification several times prior to February 2020, and supervisory experience was not required by the Appraiser III job description. It states instead that a candidate must "[h]ave the ability to organize and direct the activities of subordinate personnel."

Then, in Defendants' second and third motions to dismiss, Defendants argued that Scott was not reclassified because there were no openings for the Appraiser III position. But that argument is also unavailing because TAO policies and procedures make it clear that "[p]osition vacancies do not have to exist for these promotions."

the supposed exam score requirement of 80 appears in the record only in the declarations of Crutchfield and Claborn, both defendants here.

So, this is what we are left with—a genuine factual dispute about whether a score of 80 was required for promotion to Appraiser III. There are compelling arguments on both sides. On the one hand, Scott cannot point to anyone who has been promoted to Appraiser III without scoring an 80 on the Appraiser III exam, which could suggest a legitimate company practice or policy to that effect. On the other hand, the supposed score requirement popped up relatively late into the litigation and only in declarations from two of the defendants here, which could suggest that the "requirement" was a convenient reason utilized by opportunistic Defendants once they found out none of Scott's proffered comparators scored below an 80. The factfinder will ultimately have to decide whom to believe. Given the presence of a genuine issue of material fact such as this, we avoid making a credibility judgment and leave that task to the factfinder. Accordingly, we reverse the grant of summary judgment for Defendants.[11]

## IV.    Motion to Defer

Federal Rule of Civil Procedure 56(d) provides, "[i]f a non-movant shows . . . for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering

---

[11] Because based on the convincing mosaic approach, we reverse the district court's grant of summary judgment to Defendants, we need not address whether Scott has met her burden under the *McDonnell Douglas* framework.

the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Whether to grant a continuance under Rule 56(d) is left to the sound discretion of the trial court. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1338–39 (11th Cir. 2012). "Because the burden on a party resisting summary judgment is not a heavy one, [the party] must conclusively justify his entitlement to the shelter of [Rule 56(d)] by presenting specific facts explaining the inability to make a substantive response." *Id.* at 1338.

Here, despite first hearing of the investigation in March 2023, Scott's counsel did not make any effort to gain the investigative file until August 2023. Scott waited until after the discovery deadline of July 2023 had passed before taking any action to gain the file. Moreover, Scott's counsel did not conduct any discovery whatsoever during the pendency of the case despite the court extending the discovery deadline at Scott's request.[12] Because Scott was aware of the investigation and waited several months before taking any type of action to retrieve the files, the district court did not abuse its discretion in denying Scott's Rule 56(d) motion to defer.[13]

---

[12] Indeed, we are puzzled by counsel's decision not to conduct any discovery.

[13] We also affirm the district court's grant of summary judgment to Defendants on Scott's claims of employment discrimination under § 1981 and § 1983 because we find no reversible error in the district court's analysis of those claims.

14                      Opinion of the Court                      24-11388

**AFFIRMED in Part, REVERSED and REMANDED, in Part.**