Robert N. Scola, Jr., United States District Judge
Milita Barbara Dolan, individually and on behalf of a putative class, complains about trip insurance that JetBlue Airways Corporation sells on its website to consumers in the process of booking air travel. Dolan's grievance stems from JetBlue's undisclosed receipt of a portion of the fee that is charged for the insurance. Dolan sets forth four counts: a violation of the Florida Deceptive and Unfair Trade Practices Act (count one); unjust enrichment (count two); and violations of the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1962(c) (count three) and 18 U.S.C. § 1962(d) (count four). JetBlue seeks dismissal of the complaint on several bases: (1) the Airline Deregulation Act preempts Dolan's state-law claims; (2) the McCarran-Ferguson Act bars Dolan's two RICO claims; (3) and, for various reasons, all four counts fail to state a claim upon which relief may be granted. After careful review, the Court is largely unpersuaded by JetBlue's arguments and therefore denies its motion to dismiss in large part, granting it to a limited extent (ECF No. 32 ), as set forth below.
1. Background[1]
During the process of purchasing airline tickets on JetBlue's website, consumers *1343 are presented with an opportunity to purchase a trip insurance policy from an independent, third-party insurance company. Unbeknownst to the customer, however, JetBlue, in coordination with various third-party insurance entities, ultimately retains what Dolan characterizes as a kickback from every policy sold.
According to Dolan, JetBlue dupes its customers into believing the amounts paid for the insurance are a pass-through charge. The airline masks its own financial interest in the purchase of the insurance by identifying other parties as the producers and providers of the policies, failing to mention its own role as also acting as an insurance agent and receiving commissions. JetBlue also informs purchasers that the insurance is "[r]ecommended by AGA Service Company, the licensed producer and administrator of this plan" which is "underwritten by Jefferson Insurance Company or BCS Insurance Company." (Am. Compl. ¶ 27, ECF No. 17, 7 (emphasis in original omitted).) In completing the purchase, consumers are informed, "By purchasing, you agree to Allianz Global Assistance's purchase agreement and privacy policy." (Id. at ¶ 38 (emphasis in original omitted).) JetBlue also itemizes the cost of the insurance, separate from the cost of the ticket being purchased and confirmation of the transaction is sent separately from Allianz. All these representations and acts, says Dolan, further enhance the notion that the charge for the policy is entirely passed through to the insurance entities.
As Dolan points out, the illegality of the scheme is demonstrated by a number of aspects of the operation. First, while JetBlue receives commissions from each policy sold, it has no license to actually do so. Second, there is no correlation between the actual insurance risk that is being underwritten and the policy cost. Third, the third-party insurance entities submit false filings to various state regulators to hide JetBlue's unlicensed commissions and to misstate how consumers are charged. And, lastly, the funds that are routed back to JetBlue are disguised as "marketing" or "advertising" fees.
Dolan seeks to represent a nationwide class of consumers who purchased trip insurance policies while buying airline tickets on JetBlue's website. She seeks relief through FDUTPA, common-law unjust enrichment, and RICO. Her FDUTPA claim is based on monetary losses occasioned by JetBlue's receipt of funds paid to it as a result of its deceptive conduct. Her unjust-enrichment claim is premised on JetBlue's receipt of money through its deceptive representations and brokering insurance without a license. And her RICO claims are based on the scheme to defraud executed by JetBlue and the third-party insurance entities.
2. Legal Standard
When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. Pielage v. McConnell , 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)
*1344 and Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). That is, the complaint "must ... contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Am. Dental Ass'n v. Cigna Corp. , 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting Bell Atlantic Corp , 550 U.S. at 570, 127 S.Ct. 1955 ). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Glover v. Liggett Grp., Inc. , 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist. , 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft , 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.
Where a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc. , 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements." U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc. , 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). Thus, the Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." W. Coast Roofing & Waterproofing , 287 F. App'x at 86. To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. Id.
3. Discussion
A. Airline Deregulation Act
JetBlue maintains the Airline Deregulation Act preempts Dolan's state-law claims. As JetBlue explains, the ADA preemption clause is applied expansively: "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]." Morales v. Trans World Airlines, Inc. , 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ; Bailey v. Rocky Mountain Holdings, LLC , 889 F.3d 1259, 1262 (11th Cir. 2018) (reiterating that the ADA "expresses a broad preemptive intent"). JetBlue portrays Dolan's FDUTPA and unjust enrichment claims as "aris[ing] from JetBlue's website featuring an offer of sale of optional travel insurance during the ticket purchasing process." (Def.'s Mot. at 4.) As such, reasons JetBlue, *1345 those claims "run afoul of the ADA." (Id. ) The Court is not persuaded.
Under the ADA, no state can enact or enforce a law "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). JetBlue's argument is premised on its insistence that the complaint frames the offering of trip insurance, through JetBlue's website, as relating to the provision of the "service of an air carrier." As explained by the Eleventh Circuit, though, "three elements must be present for a particular service to be deemed a 'service' for purposes of the ADA." Amerijet Intern., Inc. v. Miami-Dade County, Fla. , 627 Fed. App'x 744, 748-49 (11th Cir. 2015). First, the service "must fit within the limited range of services over which airlines compete." Id. at 749. Second, the service "must be bargained for." Id. And, third, "the bargained-for exchange must be between an air carrier and its consumers." Id.
The Court finds the first element here presents the greatest obstacle to JetBlue's preemption argument. This is because nothing in the record before the Court indicates that trip insurance falls within "the limited range of services over which airlines compete." Despite the expansive reach of the ADA's preemption clause generally, "the ADA's purpose of promoting competition within the airline industry," is nonetheless circumscribed "because air carriers compete in only a limited range of contexts, e.g., fares, routes, timing, etc., which constitute the bargained-for elements of its service." Id. at 748 (alterations omitted) (quoting Branche v. Airtran Airways, Inc. , 342 F.3d 1248, 1255 (11th Cir. 2003) ).
Just because "other major carriers [also] provide [trip insurance] in their booking path," as JetBlue claims (Def.'s Reply, ECF No. 50, 3-4), it does not inescapably follow that JetBlue would be disadvantaged in competing in the airline industry itself if it were constrained in the way it offered this optional amenity. That is, without more, the Court does not find, at least at this stage of the litigation, that the offering of trip insurance, as part of the online ticket-purchasing process, is either "part of the customer's experience of air travel" or "considered in evaluating the quality of their flight." Branche , 342 F.3d at 1258.
The cases JetBlue relies on do not support its position. Those cases all involve services that are uniquely or inescapably tied to the airline industry itself. E.g., Miller v. Delta Air Lines, Inc. , 4:11-CV-10099-JLK, 2012 WL 1155138, at *3 (S.D. Fla. Apr. 5, 2012) (King, J.) (preempting state-law claims regarding the way an airline advertises its policies regarding lost, damaged, and delayed passenger baggage handled by the airline); Stout v. Med-Trans Corp. , 313 F. Supp. 3d 1289 (N.D. Fla. 2018) (preempting state-law claims against an air ambulance where the dispute centered on the defendant air carrier's billing practices for emergency helicopter transportation it provided); David v. United Cont'l Holdings, Inc. , 215CV01926SDWLDW, 2015 WL 7573204, at *4 (D.N.J. Nov. 24, 2015) (preempting state-law claims regarding the provision of in-flight DirecTV and Wi-Fi services); In re JetBlue Airways Corp. Privacy Litig. , 379 F. Supp. 2d 299, 304 (E.D.N.Y. 2005) (preempting state-law claim complaining of unfair and deceptive acts regarding the way the airline handled personal information obtained during the reservation and booking of air travel).
On the facts as alleged, there is certainly nothing about purchasing trip insurance, even as part of the booking process, that is particular to a service over which the airline industry competes: it may be a service that is offered by a particular airline, or *1346 even many airlines; but that does not necessarily make it an air-carrier service under the ADA. Providing a mechanism whereby consumers can insure airline-ticket purchases through a third party is not unique or limited to the airline industry. Furthermore, if anything, from the face of the complaint, it appears JetBlue's offering of trip insurance merely serves to extract extra revenue for the airline from customers who have already decided to purchase a ticket; there is nothing in the record that substantiates JetBlue's contention that the ability to purchase trip insurance during booking "attract[s] consumers" who would not otherwise choose to fly on JetBlue. (Def.'s Reply at 4.) Accordingly, the Court is not persuaded by JetBlue's argument that Dolan's state-law claims should be dismissed as preempted by the ADA.
B. McCarran-Ferguson Act
JetBlue next focuses on the McCarran-Ferguson Act and Dolan's RICO claims. According to JetBlue, Dolan's RICO claims are based on allegations that JetBlue is brokering insurance without a license, failing to disclose it is acting as an agent or broker, and improperly collecting a commission on those insurance transactions. (Def.'s Mot. at 7.) As alleged, these activities, says JetBlue, are regulated by various Florida insurance statutes: Florida Statutes sections 626.112, 626.9521, and 626.9531. Under the McCarran-Ferguson Act then, according to JetBlue, Dolan's RICO claims are barred because RICO affords her relief that would otherwise be unavailable to her under Florida law. Dolan, in opposition, argues, first, that none of the conduct alleged in her complaint relates to the business of insurance and, second, even if it did, applying RICO in this case would not in any way invalidate, impair, or supersede Florida insurance law. As such, says Dolan, McCarran-Ferguson would not bar her RICO claims. As far as its argument goes, the Court agrees with JetBlue.
As set forth in the McCarran-Ferguson Act, "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). To that end, unless Congress enacts legislation that "specifically relates to the business of insurance," such legislation cannot "be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). The act thus bars the application of federal law where three requirements are met: "(1) the federal statute at issue does not specifically relate to the business of insurance; (2) the state statute at issue was enacted for the purpose of regulating the business of insurance; and (3) application of the federal statute would invalidate, impair, or supersede the state statute." Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1220 (11th Cir.2001) (quotations and alterations omitted).
There is no dispute here that RICO does not specifically relate to the business of insurance. Further, there appears to be no debate that the Florida statutes cited to by JetBlue were enacted in order to regulate the business of insurance. See Braunstein v. Gen. Life Ins. Co. , 01-6040-CIV, 2002 WL 31777635, at *4 (S.D. Fla. Nov. 19, 2002) (Gold, J.) ("the Florida Unfair Insurance Trade Practices Act [ ] was 'enacted for the purpose of regulating the business of insurance' as enumerated by the United States Supreme Court, and thus meets the second requirement for McCarran-Ferguson preemption"). Where the parties' positions diverge, rather, is whether: (1) the complained of conduct within Dolan's RICO claims is part of the "business of insurance" within the meaning of the act *1347 and (2) the application of RICO here would "invalidate, impair, or supersede" the Florida Statute provisions at issue.
Dolan insists the alleged conduct "plainly do[es] not relate to the business of insurance." (Pl.'s Resp., ECF No. 39, 23.) Her position, however, is directly undercut by the very allegations set forth in her complaint. For example, within her allegations specific to her RICO claim, Dolan describes JetBlue's "role in the sale of trip insurance policies on its website [as] materially equivalent to that of an insurance agent or broker" and that JetBlue receives "a commission or kickback for each trip insurance policy sold." (Am. Compl. at ¶¶ 115, 117, 119 ("JetBlue ... is acting as an insurance agent").) Dolan repeatedly describes the illegality of JetBlue's commissions: JetBlue "is prohibited from receiving commissions stemming from sales of travel insurance policies" because it "lacks a license to conduct the business of insurance." (Id. at ¶¶ 110, 119 (describing JetBlue as an "unlicensed agent"), 120 ("JetBlue is not a licensed agent in any state").) In further support of her RICO claim, Dolan alleges "Allianz, BCS and Jefferson committed ... mail and wire fraud by submitting fraudulent documents to state regulators [which] failed to disclose the illegal payment of commissions to JetBlue." (Id. at ¶¶ 112, 119.) In her general allegations, Dolan alleges JetBlue "attempts to hide its role in the travel insurance program through false statements" because it "knows it lacks the required license to transact the business of insurance." (Id. at ¶ 2.) Her common allegations also repeatedly point to the fact that "JetBlue is ... acting as an unlicensed insurance agent and/or broker, receiving insurance commissions to which it has no legal entitlement." (Id. at ¶ 30, 40 ("JetBlue plays the role of insurance producer"), 41 (same), 46, 47, 48, 58.) Dolan also pointedly references "Florida's prohibition of the unlicensed sale or brokerage of insurance, including the receipt of commissions by people or entities without a license." (Id. at ¶ 31.) Dolan further points to the racketeering enterprise's submission of "false filings to the various state regulators ... hid[ing] JetBlue's role in receiving unlicensed commission kickbacks and ... mistat[ing] how consumers are charged for these travel insurance policies." (Id. at ¶ 37.) In the face of these unambiguous allegations, Dolan's persistent assertion that the alleged "conduct is separate and distinct from any insurance activities and cannot be said to relate to the business of insurance" (Pl.'s Resp. at 23) is simply untenable.
Undeterred by the obstacle of her own allegations, Dolan points to the three criteria identified by the United States Supreme Court as being "relevant in determining whether a particular practice is part of the 'business of insurance' ": (1) "whether the practice has the effect of transferring or spreading a policyholder's risk"; (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured"; and (3) "whether the practice is limited to entities within the insurance industry." Union Labor Life Ins. Co. v. Pireno , 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Regarding these three criteria, Dolan argues, respectively, (1) "JetBlue's concealment of its financial interest in trip insurance has nothing at all to do with spreading a consumer's risk of loss"; (2) an "undisclosed kickback is ... wholly unrelated to [the policy] relationship"; and (3) "JetBlue's undisclosed kickback is not limited to entities within the insurance industry." (Pl.'s Resp. at 23-24.) Dolan's arguments land wide of the mark.
To begin with, "JetBlue's concealment of its financial interest in trip insurance" and its receipt of an "undisclosed kickback" are *1348 not the alleged activities JetBlue contends implicate McCarran-Ferguson. Instead, JetBlue's focus, with respect to its McCarran-Ferguson argument, is on Dolan's allegations (1) that JetBlue was acting as an insurance agent and accepting illegal commissions as an unlicensed agent; and (2) that, in furtherance of the RICO scheme, members of the enterprise submitted false regulatory insurance filings. The cases Dolan relies on, therefore, are inapposite: missing from those cases, but present here, are any allegations regarding the submission of false insurance filings and the defendant's acting as an unlicensed agent and accepting illegal commissions in that capacity. See Group Life & Health Ins. Co. v. Royal Drug Co. , 440 U.S. 205, 214, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) (where the conduct at issue had nothing to do with being an agent, commissions, or regulatory filings, but instead related to contracts between an insurance company and a pharmacy company for the purchase of goods and not the insurance policies themselves); Sec. & Exch. Comm'n v. Nat'l Sec., Inc. , 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (where the conduct at issue did not involved any "insurance relationship" at all, but instead concerned "the relationship between a stockholder and the company in which he owns stock"); Cochran v. Paco, Inc. , 606 F.2d 460, 466 (5th Cir. 1979) (where the conduct at issue had nothing to do with commissions and alleged unlicensed agents but instead only involved the defendant finance company's financing of the plaintiff's auto-insurance premium and its ability to cancel the policy upon the borrower's default); Bowe v. Pub. Storage , 106 F. Supp. 3d 1252, 1268 (S.D. Fla. 2015) (Ungaro, J.) (where the relevant conduct was described only as the defendant storage-facility's "failure to disclose that it ultimately retains a percentage of the plaintiffs' premiums").
While Dolan tries to use JetBlue's "own admission" that it "is not even a party to the policy relationship" as a way around McCarran-Ferguson, the allegations of her own complaint, asserting the opposite, fall squarely in her way. In short, Dolan's arguments fail to persuade that her allegations relating to the business of insurance do not lie somewhere within the ambit of the McCarran-Ferguson Act. See Nat'l Sec., Inc. , 393 U.S. at 460, 89 S.Ct. 564 (listing several, non-exclusive examples of activities and transactions implicated by the McCarran-Ferguson Act: "the fixing of rates"; "[t]he selling and advertising of policies"; "the licensing of companies and their agents"; and "the contract of insurance" including "[t]he relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement"); Cochran , 606 F.2d at 465 (noting "the courts have not yet established the precise metes and bounds of the term" "business of insurance").
Dolan's argument does not end here, however. She also submits that, even if the Court finds the alleged RICO conduct relates to the "business of insurance," the application of RICO in this context would not, in any event, "invalidate, impair, or supersede" Florida insurance law. The Court disagrees.
JetBlue points to Florida Statutes sections 626.112, 626.9521, and 626.9531, under Florida's Unfair Insurance Trade Practices Act, as regulating the activities Dolan outlines in her complaint. Under section 626.112, one must be licensed in order to "act as ... an insurance agent." Section 626.9521 prohibits a deceptive act or practice involving the business of insurance. And section 626.9531 dictates how insurance agents must identify themselves and their role in selling insurance. Fatal to Dolan's RICO claims, at least with *1349 respect to her insurance-related allegations, is that none of these provisions affords a plaintiff a private right of action against a purported unlicensed agent who is selling insurance policies and Dolan does not otherwise identify any other state law that would afford a plaintiff such a right. To be sure, FUITPA allows certain private lawsuits-limited to suits against insurers who violate several specified provisions. See Fla. Stat. § 624.155 (listing which provisions afford a plaintiff a private right of action, but only as against an insurer). Even these insurer suits, however, are themselves subject to various procedural and substantive restrictions: for example, Florida Statute section 625.155 contains a pre-suit notice requirement and also specifically prohibits class actions. The Court finds these limitations, taken together and in light of the alleged facts, express Florida's policy regarding private suits against violators of FUITPA: there is no private right of action-either under FUITPA or as otherwise identified by Dolan-arising out of non-insurer JetBlue's violation of the various provisions identified. Cf. Buell v. Direct Gen. Ins. Agency, Inc. , 267 Fed. App'x 907, 909 (11th Cir. 2008) ("[P]laintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of FUITPA by asserting common law claims based on such violations.") Dolan's reliance on cases where plaintiffs sued insurers and where the state statutes at issue afford a private remedy against insurers are unavailing. E.g., Humana Inc. v. Forsyth , 525 U.S. 299, 312, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (finding no impairment of state law where state statutory and common law afforded a private right of action against an insurer for the type of fraud and misrepresentation complained of in a RICO action against an insurer); Montoya v. PNC Bank, N.A. , 94 F. Supp. 3d 1293, 1316 (S.D. Fla. 2015) (Goodman, Mag. J.) (finding no frustration of state law where a plaintiff alleged RICO claims against an insurer and state statutory and common laws were identified which afforded at least some private right of action against an insurer); Negrete v. Allianz Life Ins. Co. of N. Am. , 927 F. Supp. 2d 870, 879 (C.D. Cal. 2013) (finding no impairment of state statute where the suit was against an insurer, state regulations were identified that expressed a purpose that would be reinforced by the particular RICO action, and the state statute afforded private rights of action for other claims against an insurer). Further hampering her argument here, Dolan has also not pointed to any other Florida statutory or common-law basis upon which her insurance-based RICO claims could be based. In short, Dolan fails to convince that applying RICO in the instant case, at least with respect to her insurance-based claims, would not impair Florida insurance law by affording her the opportunity to seek relief otherwise not available under any identified Florida law. See Kondell v. Blue Cross & Blue Shield of Florida, Inc. , 187 F. Supp. 3d 1348, 1360 (S.D. Fla. 2016) (Rosenberg, J.) (finding that Florida law would be impaired where, among other things, there is no private right of action under Florida insurance law and no other viable state cause of action was identified).
This is not the end of Dolan's RICO claims entirely, however. While Dolan did herself no favors by turning a blind eye to all her insurance-centric allegations, JetBlue conversely overplayed its hand by failing to acknowledge that Dolan's allegations extend beyond insurance issues alone. In fact, much of Dolan's complaint centers on JetBlue's receipt of unearned, undisclosed, and, in fact, concealed, kickbacks and its alleged fraudulent representation that the price the consumer paid *1350 was not grossly inflated by amounts received by JetBlue-allegations unrelated to any insurance-based claims. JetBlue does not argue that Dolan's RICO claims cannot survive without the allegations that are barred under McCarran-Ferguson. As a result, the Court only dismisses Dolan's RICO claims to the extent they rely on allegations that amount to FUITPA violations. To the extent her RICO claims are pleaded on other bases, as described above, they are, at least at this stage of the litigation, viable.
C. FDUTPA
(1) Dolan's FDUTPA claims are exempted in part.
JetBlue next contends that FDUTPA's exemption for claims against "any person or activity regulated under law administered by ... [t]he Office of Insurance Regulation of the Financial Services Commission" or "any person or activity regulated under law administered by the ... Department of Financial Services" bars Dolan's FDUTPA claim. Fla. Stat. § 501.212(4)(a) & (d). Once again the parties obscure the issue by narrowing their focuses to only the fraction of Dolan's allegations that support their respective positions and pretending as if no other allegations exist. The unwillingness of either party to realistically and in good faith evaluate their respective positions in this regard is counter-productive.
Despite her dogged representation to the contrary, Dolan, in her complaint, and as set forth above, repeatedly supports her FDUTPA claim, at least in part, on JetBlue's illegal receipt of insurance commissions as an unlicensed broker. (E.g. , Am. Compl. at ¶¶ 2, 23, 30-31, 52, 58, 72(f).) Dolan has not rebutted JetBlue's arguments that these particular activities, as alleged, are violative of Florida Statutes sections 626.112, 626.9521, 626.9531, and 626.9541. Instead, she steadfastly maintains her "FDUTPA claim is not predicated upon violations of any state insurance statutes." (Pl.'s Resp. at 12.) Once again, Dolan's argument is directly belied by the allegations in her complaint. The cases she relies on for the proposition that the insurance exemption does not apply are both distinguishable: Dolan has not pointed to any alleged Florida insurance code violations in those cases. E.g., Martorella v. Deutsche Bank Nat'l Tr. Co. , 161 F. Supp. 3d 1209, 1216 (S.D. Fla. 2015), adhered to on reconsideration , 12-80372-CIV, 2015 WL 10857441 (S.D. Fla. Nov. 9, 2015) (Marra, J.) (where the complaint focused on the "charging of excessive and unreasonable amounts for [lender-placed insurance] in exchange for commissions and other remuneration" and the Court did not mention any allegations that the defendant was accepting commissions as an unlicensed broker); Bowe , 106 F. Supp. 3d at 1259 (focusing on "unearned illegal kickbacks" and the improper retention of "pass-through" charges and pointedly noting the complaint was "not [based on] insurance regulatory violations"). Thus, to the extent JetBlue's alleged activities are illegal only because they are prohibited by Florida's insurance code, Dolan may not rely on them to support her FDUTPA claim.
On the other hand, JetBlue turns a blind eye to any of the other allegations in Dolan's complaint that might support her FDUTPA claim. Thus, like her RICO claims, to the extent Dolan's FDUTPA claim is based on allegations that are not exempted-for example, that JetBlue markets the travel insurance as a "pass-through" charge-it survives dismissal.
(2) Dolan has pleaded the elements of a FDUTPA claim.
To state a claim under FDUTPA a plaintiff "must allege (1) a deceptive act *1351 or unfair trade practice; (2) causation; and (3) actual damages." Dolphin LLC v. WCI Communities, Inc. , 715 F.3d 1243, 1250 (11th Cir. 2013). The Court finds Dolan has properly alleged all three elements.
Regarding the first element, Dolan pleads that JetBlue misled its customers by indicating that the money they paid for trip insurance would all "pass through" to the insurance company. (E.g. , Am. Compl. at ¶¶ 2 ("JetBlue leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee ... for which JetBlue has no financial interest" and that the charge goes entirely "to an independent third-party insurance company"), 23 (same), 24 (listing statements on JetBlue's website which lead consumers to believe "all of their premium is passed to the actual insurer"), 32-34 (same), 39 (same), 45-46 (same), 47 ("These statement and omissions ... reinforce the impression [that] JetBlue has no profit interest in the sales of trip insurance policies on its website."); 51 (same); 55 (same).) Dolan alleges JetBlue, in fact, receives a portion of the charge that JetBlue convinces its customers is distributed entirely to third parties. This is deceptive. See Zamber v. Am. Airlines, Inc. , 282 F. Supp. 3d 1289, 1300 (S.D. Fla. 2017) (Goodman, Mag. J.) (adopted by Martinez, J.) (finding deceptive conduct based on similar allegations); Costa v. Kerzner Int'l Resorts, Inc., No. 11-60663-CV-COHN, 2011 WL 2519244, at *2 n. 2 (S.D. Fla. June 23, 2011) (Cohn, J.) (finding deceptive conduct where the defendant's representations could "lead a reasonable consumer to believe that ... funds are a pass-through to the housekeeping staff"); Berry v. Budget Rent A Car Sys., Inc. , 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) (Cohn, J.) ("the fact that the company charged what appeared to be a pass-through fee for a third-party but retained a portion for itself" is "deceptive").
JetBlue's causation and damages arguments also fall flat. In short, "[u]nder FDUTPA, causation and damages are shown by the fact that [the p]laintiff parted with money for what should have been a "pass through" charge but that was instead kept by [the defendant airline]." Zamber , 282 F. Supp. 3d at 1300 (collecting cases). Dolan alleges as much.
D. Unjust enrichment
"There are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and, finally, the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it." City of Miami v. Bank of Am. Corp. , 800 F.3d 1262, 1287 (11th Cir. 2015). Dolan has pleaded all three elements.
First, she alleges "[s]he conferred a benefit on [JetBlue] because [s]he paid money that ultimately was kept by [JetBlue]." Zamber , 282 F. Supp. 3d at 1301. The Court agrees that "[i]t is immaterial whether [the defendant airline] initially retained a portion of the funds Plaintiff paid for his policy and then sent the rest to the insurer or if all the funds went to an insurer and then a portion was 'kicked back' to [the defendant airline]." Id. Certainly, "[u]nder either scenario, money was transferred from Plaintiff's pocket and into [the defendant airline]'s." Id. In sum, "[t]hat is sufficient to confer a direct benefit." Id.
JetBlue's reliance on Virgilio v. Ryland Group, Inc. is misplaced. 680 F.3d 1329, 1337 (11th Cir. 2012). In that case the defendant simply performed marketing services for a developer from whom the *1352 plaintiffs there had purchased real property. Unlike here, the defendant there was not the actual conduit for the transaction at the center of the lawsuit. The relationship between the purchasers and the defendant in Virgilio was far more tenuous and indirect. Here, JetBlue was the direct conduit, actually facilitating the transaction itself. Also, in Virgilio , the plaintiffs' complaint stemmed from their claim that the defendant marketer "failed to inform" them about a nearby parcel that negatively affected the value of the plaintiffs' purchase. Here, in contrast, the allegations paint JetBlue as intimately involved with a scheme designed to extract unearned kickbacks and commissions from consumers who are deceived, directly by JetBlue , into thinking they are paying a pass-through fee, equal to the cost of the product they are actually buying. The reasons supporting the Virgilio court's dismissal of the unjust enrichment claim simply do not apply to the facts of this case.
Next, the other two elements both flow naturally from the first element and the facts alleged in the complaint. Dolan alleges JetBlue voluntarily accepted and retained the amounts the insurer routed back to it. (E.g. , Am. Compl. at ¶ 2 ("JetBlue retains or ultimately receives an undisclosed kickback from every policy sold.").) Lastly, like the court found in Zamber , here too "the circumstances are such that it would be inequitable for [JetBlue] to retain the money because it obtained the money through alleged deceptive acts." Zamber , 282 F. Supp. 3d at 1301. Thus "even if [a] consumer is willing to pay the total price (with the overcharge) for the product or service," the misrepresentations or omissions related to the purported "pass-through" charge render the retention of the overcharge inequitable. Id.
E. RICO
Aside from the McCarran-Ferguson Act issues with Dolan's RICO claims, as addressed above in section 3.B., JetBlue also contends Dolan's § 1962(c) RICO claim fails for a number of other reasons as well: (1) a RICO claim cannot be premised on omissions unless the plaintiff establishes the defendant had a duty to disclose; (2) the allegations do not comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standards; (3) Dolan has not alleged proximate cause; (4) Dolan has not alleged the requisite injury to her business or property; and (5) Dolan has not adequately alleged an enterprise. For the most part, as set forth below, the Court is not persuaded.[2]
(1) Dolan's RICO claim does not rest solely on JetBlue's failure to disclose how the insurance charge is ultimately distributed.
The Court finds JetBlue's omissions argument misdirected. Dolan's complaint is not centered only on JetBlue's failure to disclose the alleged kickbacks it was receiving on each policy; rather much of her complaint focuses on how JetBlue's website presentation regarding trip insurance, as a whole, serves to proactively mislead consumers into thinking that the cost of the insurance is a pass-through charge. According to the complaint, JetBlue tricks consumers into thinking the charge is entirely passed through in a number of ways. For example, JetBlue identifies another entity "as the company brokering the policy." (Am. Compl. at ¶¶ 23, 29, 41.) This, according to Dolan, *1353 misleads consumers into thinking the other entity is the only company receiving a commission for the policy when, allegedly, JetBlue is also receiving a commission. (Id. ) Dolan also alleges JetBlue tells consumers that the licensed producer and administrator of the insurance policy recommends the purchase (id. at ¶ 27) but that this statement is false (id. at ¶ 28). Part of Dolan's claim also rests on the way JetBlue itemizes the cost of the policy, separately from the airfare charge. (Id. at ¶ 33.) According to Dolan, this too serves to dupe consumers into thinking the cost of the insurance is a pass-through charge. (Id. ) One link from JetBlue's website states that the trip insurance is "from Allianz Global Assistance." (Id. at ¶ 44.) This again, Dolan alleges, leads one to presume that the fee charged is entirely passed through. (Id. at ¶ 46.)
The cases JetBlue cites to are thus not on point. In those cases, there is no indication the plaintiffs were attempting to bring RICO claims based on anything more than failures to disclose or omissions. E.g., Am. United Life Ins. Co. v. Martinez , 480 F.3d 1043, 1065 (11th Cir. 2007) (RICO claim dismissed where no affirmative misrepresentations were alleged; instead the allegations were based on information the defendants were presumed to have learned but which the defendants simply failed to disclose); McCulloch v. PNC Bank Inc. , 298 F.3d 1217, 1225 (11th Cir. 2002) (RICO claim dismissed where the plaintiff loan applicants did not identify any affirmative representations made by the defendant lender when it failed to inform the applicants of alternative loan options); Langford v. Rite Aid of Alabama, Inc. , 231 F.3d 1308, 1310 (11th Cir. 2000) (RICO claim dismissed where defendant pharmacy failed to disclose that it charged uninsured customers more for prescription drugs than its insured customers but the defendant was not alleged to have made any actual affirmative misrepresentations); Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc. , 13-80385-CIV, 2014 WL 12452450, at *7 (S.D. Fla. June 26, 2014) (Brannon, Mag. J.) (RICO claims dismissed where the defendant itself was not the one who made any false statements).
(2) JetBlue's argument with respect to the heightened pleading standards of Federal Rule of Civil Procedure 9(b) is not persuasive.
JetBlue next argues Dolan's allegations do not adequately allege fraud as required by Rule 9(b). Its argument in this regard is woefully inadequate and fails to persuade. JetBlue lists the heightened Rule 9(b) pleading requirements and then asserts, "Plaintiff ... has not adequately alleged mail or wire fraud." (Def.'s Mot. at 15.) In support, JetBlue simply claims Dolan "does not allege which ... statements on JetBlue's website she actually saw, how the website allegedly misled her , or even the amount of her alleged injury." (Id. at 14-15 (emphasis JetBlue's).) Not only is this argument short on support, it is inaccurate. See McPherson v. Kelsey , 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal quotation omitted)). Dolan, as detailed above, identifies specific statements on JetBlue's website, how those statements, collectively, misled her, duping her into funding a kickback to JetBlue while she thought she was only paying a pass-through charge to a third party. She pointedly alleges "each consumer sees the same marketing language" and that she herself relied on the misrepresentations in purchasing trip insurance. (Am. Compl. at ¶¶ 15, 122.) The Court therefore denies JetBlue's motion to dismiss on this basis.
*1354 (3) Dolan has adequately pleaded proximate cause.
JetBlue also submits Dolan has not properly alleged that JetBlue's RICO violation was the proximate cause of her injury. In support, JetBlue points to Dolan's failure to "allege[:] what she paid for her insurance"; "that comparable insurance would have cost less"; she "would not have purchased the voluntary trip insurance" if she knew about the kickbacks; or that she "would have purchased trip insurance elsewhere" if she knew about the kickbacks. (Def.'s Mot. at 32.) JetBlue also points out Dolan fails to "account for the many factors other than cost that might have induced [Dolan] ... to purchase the trip insurance." (Id. ) The Court is not convinced.
Dolan specifically alleges she "relied on" JetBlue and the enterprise coconspirator's "false statements and omissions ... that the full customer premium went to the cost of the travel insurance policy." (Am. Compl. at ¶ 122.) Dolan says JetBlue tricked her into thinking "the price displayed represented the cost of the policy" when, "[i]n reality, the insurance premium price include[d] a large kickback to JetBlue." (Id. at ¶ 106.) As a result, Dolan continues, the cost of the insurance premium was accordingly inflated. (Id. ) Assuming her allegations are true, as the Court must at this stage, Dolan was injured by JetBlue's scheme: as a direct result of JetBlue's deception, she paid not only for trip insurance, but, unknowingly, for a kickback to JetBlue as well. See Bridge v. Phoenix Bond & Indem. Co. , 553 U.S. 639, 649, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) ("Accepting their allegations as true, [the plaintiffs] clearly were injured by [the defendants'] scheme: As a result of [the defendants'] fraud, [the plaintiffs] lost valuable liens they otherwise would have been awarded.") Dolan directly links her loss to JetBlue's deceptively representing that the trip insurance is a pass-through charge. See Ray v. Spirit Airlines, Inc. , 836 F.3d 1340, 1350 (11th Cir. 2016) (dismissing RICO claims because, unlike here, the plaintiffs failed to allege "any link," never mind a "direct link" between the defendant airline's presentation of a fee and the plaintiffs' decision to part with her money); Jackson v. U.S. Bank, N.A. , 44 F. Supp. 3d 1210, 1218 (S.D. Fla. 2014) (finding a viable RICO claim where the defendant mislead the plaintiff into thinking the amount paid "reflected the cost of insurance" while omitting any mention that the cost "covered unearned kickbacks and other charges") (Moreno, J.) (citing Cannon v. Wells Fargo Bank, N.A., 2014 WL 324556, at *3, (N.D. Cal. Jan. 29, 2014) because the court there upheld a "RICO claim because 'Defendants' non-disclosure of the kickbacks may be the basis for the scheme to defraud' "). The Court thus denies JetBlue's motion on this basis as well.
(4) The Court is not persuaded that Dolan has not alleged the requisite injury to business or her property.
JetBlue complains Dolan's injury allegations are conclusory and speculative, unsupported by any factual allegations that the price she paid for the trip insurance was actually inflated. The Court disagrees with JetBlue's characterization of Dolan's claims. Dolan's RICO allegations are "sufficient to show that [she] ha[s] suffered an injury by paying more for a service than its actual value." Bowe , 106 F. Supp. 3d at 1265-66. Dolan has alleged enough in this regard to survive JetBlue's motion to dismiss on this basis.
(5) Dolan has adequately alleged a RICO enterprise.
According to JetBlue, Dolan fails to allege a RICO enterprise because "simple contractual relationships are not ordinarily *1355 the stuff on which RICO enterprises are made." (Def.'s Mot. at 19 (quoting AARP v. Am. Family Prepaid Legal Corp., Inc. , 604 F. Supp. 2d 785, 787 (M.D.N.C. 2009).) Once again, the Court finds JetBlue, in presenting its argument, to have mischaracterized Dolan's allegations. Dolan alleges JetBlue and its co-conspirators formed an association in fact. Her complaint sets forth the three necessary structural features of an association in fact: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." State Farm Mut. Auto. Ins. Co. v. Kugler , 11-80051, 2011 WL 4389915, at *5 (S.D. Fla. Sept. 21, 2011) (Hurley, J.). As alleged in the complaint, the enterprise here consists of JetBlue and various insurance entities. (Am. Compl. at ¶ 102.) Dolan describes the relationships between these entities, how they acted in concert to facilitate the funneling of the alleged unearned kickbacks to JetBlue, and that the enterprise has operated for over four years. (Id. at ¶¶ 102-104, 108-111.) This is sufficient to survive JetBlue's motion to dismiss.
F. Class Allegations
Lastly, JetBlue urges the Court to dismiss Dolan's nationwide class allegations. The Court agrees with JetBlue that nationwide class treatment is not appropriate for Dolan's FDUTPA and unjust enrichment claims: "FDUTPA applies only to actions that occur within the state of Florida," Carnival Corp. v. Rolls-Royce PLC , 08-23318-CIV-SEITZ, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (Seitz, J.); and "the substantial variations in law among the fifty states [regarding unjust enrichment] 'swamp any common issues and defeat predominance,' " Kunzelmann v. Wells Fargo Bank, N.A. , 9:11-CV-81373-DMM, 2013 WL 139913, at *6 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.) (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1261 (11th Cir. 2004) ). Further, Dolan has wholly failed to address the substance of JetBlue's arguments in this regard. "The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim." U.S. ex rel. Osheroff v. Tenet Healthcare Corp. , 09-22253-CIV, 2012 WL 2871264, at *9 (S.D. Fla. July 12, 2012) (Huck, J.) (citing Edmondson v. Bd. of Trs. Of Univ. of Ala., 258 Fed. App'x 250, 253 (11th Cir. 2007) ). The Court thus dismisses the nationwide class allegations regarding FDUTPA and unjust enrichment. Vandenbrink v. State Farm Mut. Auto. Ins. Co. , 8:12-CV-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification.")
On the other hand, the Court denies JetBlue's request to dismiss the nationwide class allegations for lack of specific jurisdiction over JetBlue. Lee v. Branch Banking & Tr. Co. , CV 18-21876-CIV, 2018 WL 5633995, at *6 (S.D. Fla. Oct. 31, 2018) (Scola, J.) (holding that Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County , --- U.S. ----, 137 S. Ct. 1773, 1777, 198 L.Ed.2d 395 (2017) does not bar non-resident class member claims). The court also denies JetBlue's request to dismiss Dolan's nationwide RICO class claims as well. JetBlue's argument relates to Dolan's insurance-statute-based allegations. Since the Court has determined that McCarran-Ferguson bars Dolan's RICO claims to the extent they are based on violations of Florida insurance statutes, JetBlue's quarrel here is moot.
4. Conclusion
In summary, the Court grants JetBlue's motion in part and denies it in part (ECF
*1356 No. 32 ), as detailed above: the majority of Dolan's claims survive dismissal at this stage of the litigation. Dolan's nationwide class allegations with respect to her FDUTPA and unjust-enrichment claims are dismissed. JetBlue's motion to stay discovery (ECF No. 35 ) is denied as moot .
JetBlue must respond to the amended complaint on or before June 7, 2019 .
Done and ordered at Miami, Florida, on May 28, 2019.

The Court accepts the complaint's allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., Inc. , 116 F.3d 1364, 1369 (11th Cir. 1997).

Because the Court finds Dolan's substantive RICO claim survives dismissal, and because the Court finds Dolan has sufficiently alleged facts establishing an agreement between co-conspirators to violate RICO, it also denies JetBlue's efforts to dismiss Dolan's RICO conspiracy claim.